ROBERT G. HERSHENHORN and ESTHER A. HERSHENHORN, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Hershenhorn v. Commissioner
Docket No. 29443-81.
United States Tax Court
T.C. Memo 1985-286; 1985 Tax Ct. Memo LEXIS 349; 50 T.C.M. (CCH) 135; T.C.M. (RIA) 85286; June 13, 1985. Robert G. Hershenhorn, pro se. Thomas C. Borders, for the respondent. WILES MEMORANDUM FINDINGS OF FACT AND OPINION WILES, Judge: Respondent determined an $837 deficiency in petitioners' 1977 Federal income taxes. The sole issue for decision is whether petitioner, Robert G. Hershenhorn, is entitled to deduct his distributive share of the losses claimed by the respective partnerships, Canyon Associates and *350 Elk Creek Associates. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. Robert G. Hershenhorn (hereinafter petitioner) and Esther A. Hershenhorn, husband and wife, resided in Wilmette, Illinois, at the time their petition herein was filed. Petitioner, an attorney, graduated from the University of Chicago Law School in 1969. At all relevant Times, petitioner was general counsel and secretary to a corporation with offices in Chicago, Illinois. In December 1976, petitioner, together with Harold G. Daugherty, formed the partnership, Daugherty and Hershenhorn (hereinafter D & H). D & H was organized primarily to invest in a coal mining limited partnership named Cayon Associates (hereinafter Canyon). Canyon is a Pennsylvania limited partnership that was formed to lease and mine coal in Fayette County, West Virginia. No coal was mined or sold by Canyon during 1977. Petitioner contributed $1,500 of the $10,000 invested by D & H in Canyon Associates. On its 1977 U.S. Partnership Return (Form 1065) Canyon reported no income and claimed an ordinary loss in the amount of $147,417 which arose from the following claimed deductions: Interest
$140,000.00
Taxes
667.00
Amortization
6,750.00
Total
$147,417.00
*351 D & H's distributive share of this claimed loss was $2,300. Petitioner's distributive share of this loss was $345. Elk Creek Associates (hereinafter Elk Creek) is a New Jersey limited partnership formed to lease and mine coal from small parcels of land in Magoffin County, Kentucky. In December 1977, D & H acquired an interest in Elk Creek in the amount of $19,687.50. Petitioner contributed $687.50 of D & H's investment in Elk Creek. On its 1977 Partnership Return, Elk Creek reported no income and claimed a total ordinary loss of $2,229,625 which was disallowed by respondent. The disallowances are as follows: Item
Amount
Royalty
$2,281,500.00
Amortization
625.00
Professional Fees
17,500.00
Total
$2,299,625.00
D & H's distributive share of this claimed loss was $60,365. Petitioner's distributive share of this loss was $2,122.42. Elk Creek's private offering memorandum provided that Elk Creek would sublease from Dry Fork Coal Company, Inc., the rights to mine and remove coal beneath approximately 1,130 acres in Magoffin County, Kentucky. The unexecuted form of this sublease, as it appears in exhibit B to the private offering memorandum, *352 provides that the partnership would "pay" a minimum annual royalty of $175,500 for the term of the sublease, (15) years plus any renewal terms, with $2,281,500, the first thirteen years of minimum royalties, being due immediately. The lease further provided that the "advance minimum royalty" in the amount of $2,281,500 was payable as follows: (a) the sum of $675,000 in cash, the receipt of which is hereby acknowledged; and (b) the balance in the sum of $1,606,500, together with interest thereon commencing as of the date hereof at the rate of six percent per annum, shall be due and payable on December 31, 1987, and shall be evidenced by a negotiable promissory note (the "Note") executed by the Lessee (co-signed by each partner of the Lessee) and delivered to the Lessor * * *. This note was due on December 31, 1987, with interim payments only if coal was mined and sold. A promissory note bearing the date December 21, 1977, in the amount of $1,606,500 was executed by Martin L. Ellis as the general partner on behalf of Elk Creek. In an undated Addendum to said note, petitioner, on behalf of D & H, acknowledged that D & H was a co-maker of the note and was liable for *353 2.625 percent of the obligation. The note was a recourse note that converted into a nonrecourse note if (1) "the Maker's average annual tonnage of coal mined and sold for any consecutive three-year period is less than 50,000 tons, or (2) the principal balance of this obligation is reduced to $1,000,000 by payments on account thereof on or before December 31, 1983 * * *." The total cash contributed to Elk Creek totaled $736,000. After payment of the advancement, royalty, miscellaneous legal expenses, and accounting fees, the contributed capital was depleted to $6,000 as of December 31, 1977. The partnership had no liquid assets other than the $6,000 cash. Six thousand dollars working capital was not sufficient to start a coal mining operation or even to obtain the engineering work necessary to get a mining permit which would require approximately $10,000 to $20,000. There is no indication any coal has ever been mined by, or on behalf of, Elk Creek. On his 1977 income tax return, petitioner claimed his distributive share of D & H's losses derived from Canyon and Elk Creek. In the statutory notice of deficiency, respondent disallowed petitioner's deduction of his distributive *354 share of the partnership's losses. OPINION The sole issue for decision is whether petitioner is entitled to deduct his portion of the distributive share of the losses claimed by the respective partnerships, Canyon and Elk Creek. We will discuss each partnership separately. Canyon
Canyon was organized to lease and mine coal in West Virginia. No coal was mined or sold during 1977. On its 1977 Partnership Return, Canyon reported no income and a $147,417 loss. It is well settled law that respondent's deficiency as set forth in the statutory notice is presumptively correct and that petitioner bears the burden of proof. Rule 142(a), Tax Court Rules of Practice and Procedure; Welch v. Helvering,290 U.S. 111, 115 (1933). Deductions are a matter of legislative grace, and the taxpayer must prove that he is entitled to deduct the specific items claimed. New Colonial Ice Co. v. Helvering,292 U.S. 433, 440 (1934). To meet his burden, petitioner must substantiate the amounts of the deductions claimed. Hradesky v.Commissioner,65 T.C. 87, 89-90 (1975), affd. per curiam 540 F.2d 821 (5th Cir. 1976). *355 Petitioner, an attorney, is well aware that he has the burden of proof to establish that the items in dispute are deductible by Canyon. Nonetheless, petitioner makes the specious argument that because respondent offered no evidence in contradiction of the claimed deductions, he has carried his burden. We find it difficult to believe that petitioner does not understand that having the burden of proof requires that he come forward with evidence supporting the claimed deductions. Petitioner has not presented any evidence to substantiate Canyon's deductions. Moreover, at trial, petitioner testified that he never examined Canyon's books and records and does not know whether the deductions claimed by Canyon on its 1977 return were actually paid or properly accrued. Accordingly, petitioner has failed to carry his burden of proof on this issue and we must sustain respondent's determination. Elk Creek
On its 1977 Federal partnership return (Form 1065), Elk Creek reported no income but claimed a total loss of $2,299,625 which consisted of the following deductions: (a) $2,281,500 for royalties; (b) $625 for amortization; (c) $17,500 for professional fees. Petitioner claimed a *356 deduction in the amount of $2,122.42 on his 1977 Federal income tax return as his distributive share of Elk Creek's loss. Respondent disallowed this deduction in total. Respondent argues that Elk Creek was not engaged in the coal mining activity with the primary objective and intent of making a profit. In the alternative, respondent argues that the advanced royalties are not deductible under section 1.612-3(b)(3), Income Tax Regs., and, with respect to the other items, petitioner has failed to carry his burden of proof. On the other hand, petitioner contends that Elk Creek's advanced royalty qualifies as a minimum royalty under section 1.612-3(b)(3), Income Tax Regs[1] Alternatively, petitioner argues that he is entitled to deduct his distributive share of the cash royalty paid by Elk Creek in 1977. For the reasons set forth below we agree with respondent. We will consider respondent's alternative argument first. *357 In general, advanced royalties paid with respect to a mined product are deductible in the year that the mined product is sold. If the mined product is sold before it is produced, the advanced royalties are deductible in the year of production. See section 1.612-3(b)(3), Income Tax Regs. The regulations recognize an exception to the general rule in the case of advanced royalties paid or accrued "as a result of a minimum royalty provision." Under that exception advanced royalties may, at the option of the payor, be deducted in the year that they are paid or accrued. A minimum royalty provision must require "that a substantially uniform amount of royalties be paid at least annually either over the life of the lease or for a period of at least 20 years, in the absence of mineral production requiring payment of aggregate royalties in a greater amount." Sec. 1.612-3(b)(3), Income Tax Regs.
We have considered this regulation on several prior occasions each involving facts indistinguishable from the instant case. Wing v. Commissioner,81 T.C. 17 (1983); Maddrix v. Commissioner,83 T.C. 613 (1984). See also Vastola v. Commissioner, *358 84 T.C.     (filed May 21, 1985); Oneal v. Commissioner, 84 T.C.     (filed June 4, 1985). Indeed, petitioner, well aware of our decision in Wing, offered no evidence or legal argument that would require a result different than that reached in Wing. In Wing v. Commissioner,supra, the taxpayer entered into a lease of coal property obligating himself to pay a $6,000 minimum royalty yearly for the 10-year term of the lease. The sublease provided that payment was to be made upon execution of the sublease in the form of $10,000 cash plus a $50,000 nonrecourse note. This Court disallowed the advanced minimum royalty deduction, concluding that there was no requirement that the royalties were of a substantially uniform amount to be paid annually over the life of the lease. In so concluding we noted that the payment on the note was wholly contingent on the taxpayer's mining the coal. The fact that the royalty payment was contingent negated a finding that there was a requirement that the $60,000 amount be paid. As we stated in Wing:
To qualify for the deduction, the petitioner must meet the terms of the regulation, which sets out *359 that a minimum royalty provision must require payment at least annually. That the note may in fact be paid at some later date is not sufficient to establish the existence of such a requirement. [81 T.C. at 40-41] In Maddrix v. Commissioner,supra, we were again faced with the issue of whether certain amounts paid by the taxpayers in the form of cash plus a nonrecourse promissory note constituted an advanced or minimum royalty payment. As in Wing, the annual minimum royalty payment was to be made upon the execution of the sublease in the form of cash plus a nonrecourse note. In Maddrix, however, the partnership entered into a mining services contract with a corporation that agreed to mine a specified amount of coal each year of the agreement. This contract also contained a liquidated damage clause that guaranteed payment of the nonrecourse note in the event that it defaulted on its obligation to mine the specified amount of coal each year. In Maddrix, we found the documents reflected an intention that the taxpayer's note be satisfied only out of coal sales proceeds. We reiterated our position that payments that were *360 contingent on coal sales or production do not establish an enforceable requirement that substantially uniform royalties be paid annually regardless of annual production. Such contingency is inherently inconsistent with the regulatory definition of a minimum royalty provision. We also rejected the taxpayer's contention that the existence of the liquidated damage clause eliminates the otherwise contingent nature of the note. We stated: "The existence of the liquidated damages clause in the mining services contract does not combine with the other documents to establish an enforceable requirement for substantially uniform annual payments of minimum royalties." [83 T.C. 624]
In the instant case, we agree with respondent that Elk Creek's payment of an annual royalty is conditioned upon coal mining and was not required to be made annually. As in Wing and Maddrix, as well as Vastola and Oneal, the documents in the private offering memorandum reflect an intention that petitioner's note will be satisfied only out of coal proceeds. Petitioner's execution of a "recourse" note, does not alter our conclusion. The provisions of the note virtually guarantee *361 that it will not be paid off. According to the terms of the note, it converts to a nonrecourse note if the maker's tonnage of coal mined and sold for any three-year period is less than 50,000 tons. We believe that it was the parties' intent that little or no coal would be mined within the first three-year period; [2] in substance the note was a nonrecourse note. Accordingly, we must conclude that there was no enforceable requirement that minimum royalties would be paid annually regardless of the production and, any royalties paid in 1977, were not paid "as a result of a minimum royalty provision." Petitioner argues that at least he is entitled to deduct his distributive share of the cash royalties paid by Elk Creek in 1977. This argument was similarly considered *362 and rejected by this Court in Wing v. Commissioner,supra. In Wing we held that, since no valid minimum royalty provision existed, any cash payment represents a cash advance royalty which is deductible when coal is sold or produced. In the instant case, no coal was sold or produced in 1977. Therefore, petitioner is not entitled to a deduction for any portion of the cash royalty allegedly paid by Elk Creek in 1977. We now turn to Elk Creek's claimed deductions for amortization and professional fees. At trial, petitioner did not contest respondent's disallowance of these deductions, nor did he offer any evidence to substantiate them. Therefore, petitioner has either conceded these items, or has failed to carry his burden of proof. Accordingly, we sustain respondent on these issues. [3]
Finally, we note that petitioner, an experienced attorney, was well aware of the adverse precedent on the issues presented in this case. Indeed, petitioner cites Wing v. Commissioner, supra, *363 in his trial memorandum and brief. Moreover, petitioner failed to introduce any credible evidence in support of his assertion that the partnerships were engaged in mining activities or that their claimed expenses were actually paid or accrued. [4] Although it appears that petitioner may have intentionally maintained this action primarily for delay, we decline to impose damages under section 6673 as requested by respondent; this time we will give petitioner the benefit of the doubt. We do, however, admonish petitioner that this Court will not tolerate such dilatory action by a member of the Bar. Such conduct may not only result in the imposition of up to $5,000 in damages under section 6673, but may be reported to local Bar associations for appropriate disciplinary action. See Oneal v. Commissioner, supra.
To *364 reflect the foregoing, Decision will be entered for the respondent.
Footnotes
1. Section 1.612-3(b)(3), Income Tax Regs., provides in relevant part: [I]n the case of advanced mineral royalties paid or accrued in connection with mineral property as a result of a minimum royalty provision, the payor, at his option, may instead treat the advanced royalties as deductions from gross income for the year in which the advanced royalties are paid or accrued. See section 446 (relating to general rule for methods of accounting) and the regulations thereunder. For purposes of this paragraph, a Minimum royalty provision requires that a substantially uniform amount of royalties be paid at least annually either over the life of the lease or for a period of at least 20 years, in the absence of mineral production requiring payment of aggregate royalties in a greater amount.↩ [Emphasis added.]
2. It strains credulity to believe that the partnership honestly intended to mine coal when, after payment of the advance royalties and miscellaneous fees, the partnership's contributed capital was depleted to only $6,000. Six thousand dollars was not enough to pay the cost of obtaining the engineering work necessary to get a mining permit. Certainly it was insufficient capital to commence mining operations.↩
3. Because of our resolution of respondent's alternative argument, we need not decide whether Elk Creek was engaged in coal mining activity with the primary objective of making a profit.↩
4. Petitioner introduced copies of Canyon's partnership returns, Elk Creek's partnership returns, D & H's partnership returns, and his individual income tax return. However, income tax returns are not proof of the matters contained therein. Halle v. Commissioner,7 T.C. 245 (1946), affd. 175 F. 2d 500↩ (2d Cir. 1949).